UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHASSITY M.,[1] | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00822-JMS-TAB |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| *Defendant*. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Chassity M. applied for disability insurance benefits ("DIB") in February 2017.

[Filing No. 13-5 at 2-3.]  Her application was denied initially, [Filing No. 13-3 at 2-11], and

upon reconsideration, [Filing No. 13-3 at 12-24].  Administrative Law Judge Gladys Whitfield

("the ALJ") held a hearing on the application on March 20, 2019 ("the First Hearing"), [Filing

No. 13-2 at 67-109], before issuing a decision denying Chassity M. benefits ("the First

Decision"), [Filing No. 13-3 at 28-38].  The Appeals Council granted Chassity M.'s request for

review, vacated the First Decision, and remanded the case to the ALJ for further consideration.

[Filing No. 13-3 at 45-46.]  The ALJ held another hearing on October 14, 2020 ("the Second

Hearing"), [Filing No. 13-2 at 44-65], before issuing another decision, again denying Chassity

M. benefits ("the Second Decision"), [Filing No. 13-2 at 21-37].  The Appeals Council denied

review of the Second Decision.  [Filing No. 13-2 at 2-4].  Chassity M. then timely filed this civil

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

action asking the Court to review the denial of benefits in the Second Decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).  The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a

remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Chassity M. was 40 years old on the date of her DIB application in 2017. [*See* Filing No. 13-5 at 2.] She alleged that she became disabled on October 2, 2015, due in part to a back injury she sustained at work. [*See* Filing No. 13-5 at 2-8.][2]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Chassity M. was not disabled. [Filing No. 13-2 at 21-37.] Specifically, the ALJ found as follows in the Second Decision:

- At Step One, Chassity M. had not engaged in substantial gainful activity[3] during the period from her alleged onset date on October 2, 2015 through her date last insured of December 31, 2019. [Filing No. 13-2 at 23.]

- At Step Two, Chassity M. has the following severe impairments: "overweight-mild obesity in combination with the claimant's degenerative disc disease with disc extrusion, mild disc narrowing and saddle anesthesia, depression and anxiety disorder." [Filing No. 13-2 at 24.]

- At Step Three, Chassity M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 24-26.]

- After Step Three but before Step Four, Chassity M. had the RFC "to perform sedentary exertional level work as defined in 20 CFR 404.1567(a) except she may alternate positions so long as no more frequently than every 15 minutes;

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

can only occasionally balance, stoop, kneel, crouch and crawl; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds or operate foot controls; avoid constant exposure to wetness; avoid all use of hazardous moving machinery and all exposure to unprotected heights; overhead reaching no more than occasionally; reaching forward and to the sides, pushing, pulling, handling, fingering, feeling all no more than frequently.  Furthermore, [Chassity M.] is able to understand, remember and carry out unskilled work with simple instructions and simple tasks; able to interact appropriately with supervisors and co-workers in a routine work setting; able to respond to usual work situations and to changes in a routine work setting; limited to work that involves only simple work related decisions and routine work place changes that is unskilled work; no fast-paced or assembly line production requirements, tandem tasks or teamwork; occasional interaction with the general public, co-workers and supervisors; capable of no complex written or verbal communications; no complex decision-making; limited to simple, routine, repetitive tasks, that is short cycle work where the same routine tasks are performed over and over according to set procedures, sequence, or pace, with little opportunity for diversion or interruption; no more that occasional routine work place changes; can tolerate normal supervisory interactions including for example, performance appraisals, corrections, instructions, and directives as necessary; can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work; can exercise judgment in making work-related decisions commensurate with simple routine repetitive work."  [Filing No. 13-2 at 26-27.]

- At Step Four, Chassity M. was unable to perform her past relevant work as a certified nursing assistant and home health aide.  [Filing No. 13-2 at 35.]

- At Step Five, relying on the testimony of the vocational expert ("VE") who testified at the Second Hearing and considering Chassity M.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she can perform, such as bench assembler, circuit board inspector, and optical inspector.  [Filing No. 13-2 at 35-36.]

### III.
### DISCUSSION

Chassity M. argues that the ALJ erred by: (1) failing to address whether Chassity M. could be on task 90 percent of the workday and have no more than two absences per month, after the VEs who testified at the First Hearing and the Second Hearing both stated that a claimant would need to meet those requirements in order to be employed; and (2) failing to address a

material conflict between the testimony of the VE at the First Hearing, who stated that a person who needed to alternate positions every 15 minutes could not sustain employment, and the VE at the Second Hearing, who stated that such a person could sustain employment. [Filing No. 15 at 1-2.] The Court will address each issue in turn.

### A. Whether the ALJ Erred in Failing to Address Chassity M.'s On Task Time and Absences

Chassity M. notes that the ALJ found that her severe impairments include depression and anxiety, which result in moderate limitations in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself. [Filing No. 15 at 16 (citing Filing No. 13-2 at 24-25).] Chassity M. also points out that at the First Hearing, VE Dewey Franklin testified that an employer would not tolerate an employee being off task more than 10 percent of the time or being absent more than one or two days per month, and at the Second Hearing VE Don Harrison testified that an employer would not tolerate an employee being off task more than 10 percent of the time or being absent more than one and a half days per month. [Filing No. 15 at 16 (citing Filing No. 13-2 at 57-58; Filing No. 13-2 at 107).] Chassity M. argues that the ALJ never considered whether Chassity M. could be on task at least 90 percent of the time or whether her impairments would require her to miss more than one or two days of work per month, and therefore the case must be remanded. [Filing No. 15 at 14-17.] In support of her position, Chassity M. points to the Seventh Circuit's decision in *Lothridge v. Saul*, 984 F.3d 1227 (7th Cir. 2021), and this Court's decision in *Sheryl B. v. Kijakazi*, 2021 WL 3855482 (S.D. Ind. Aug. 30, 2021). [Filing No. 15 at 14-17.]

In response, the Commissioner argues that Chassity M. has not pointed to any evidence demonstrating that she would be off task more than 10 percent of the time or would require more

absences than an employer would tolerate. [Filing No. 16 at 7-9.] The Commissioner contends that it is Chassity M.'s burden to establish her disability by presenting evidence supporting greater limitations than those found by the ALJ. [Filing No. 16 at 7-8.] According to the Commissioner, *Lothridge* and *Sheryl B.* are distinguishable from the present case, and the Court should instead follow its previous decision in *Tina F. v. Kijakazi*, 2021 WL 4488162 (S.D. Ind. Sept. 15, 2021), which requires the claimant to point to evidence demonstrating the need for additional off-task time. [Filing No. 16 at 8-9.] The Commissioner contends that "[r]emanding this case according to [Chassity M.'s] argument that the ALJ failed to show she was able to stay on-task for 90 percent of the workday and would not miss work above employer tolerances would reverse the burden of proof in every case where an ALJ does not address those limitations." [Filing No. 16 at 8.]

In reply, Chassity M. reiterates that, under *Lothridge*, the ALJ was required to determine whether Chassity M. could meet the off-task and absence requirements identified by the VEs. [Filing No. 17 at 1-2.] Chassity M. also argues that "[t]here are several parts of the record, both in medical records and otherwise, indicating that meeting attendance and on-task requirements would be a problem for [her]," including: (1) the ALJ's findings that depression and anxiety are severe impairments and cause moderate limitations in several areas; (2) records from examining physician Dr. Robert Gregori, who wrote that Chassity M.'s symptoms might improve with medication, but it is not clear whether she would be able to work full-time, even with treatment; (3) records from psychologist Dr. E. Ann Miller, who noted that Chassity M. was tearful; (4) Chassity M.'s testimony at the First hearing that she has to lie down three or four times a day for at least 30 minutes each time; and (5) the fact that the ALJ believed it necessary to ask the VEs about off-task time and absences. [Filing No. 17 at 3-4.] Chassity M. maintains that

*Lothridge* and *Sheryl B.* control, and asserts that *Tina F.* is distinguishable because the ALJ in that case made a finding that the claimant would not be off task more than 10 percent of the workday. [Filing No. 17 at 4-6.]

At the First Hearing, the VE, Mr. Franklin, testified regarding off-task behavior that "[a]nything more than ten percent would not be tolerated by an employer." [Filing No. 13-2 at 107.] He further stated that during the probationary period, which is generally 30 to 90 days, an employer would not tolerate an employee being absent from work. [Filing No. 13-2 at 107.] According to Mr. Franklin, after the probationary period, an employee may be able to miss one, or possibly two, days per month, but "[i]f this is chronic behavior[,] that would not be tolerated by an employer." [Filing No. 13-2 at 107.]

At the Second Hearing, the ALJ asked the VE, Mr. Harrison, if he had an opinion regarding employer tolerance for off-task behavior. [Filing No. 13-2 at 57.] He stated: "[I]t's based primarily on my experience, not exceeding, Your Honor, ten percent of the workday and that ten percent should be spread out over the entire work period. And it should not occur, of course, one time or even, even two times during the workday." [Filing No. 13-2 at 57-58.] When asked about employer tolerance for absenteeism, Mr. Harrison stated: "Again based on my experience, [employers] will tolerate up to one and a half days per month." [Filing No. 13-2 at 58.] Mr. Harrison further clarified that the representative jobs he identified generally have 90-day probationary periods during which employers have "zero tolerance on absences." [Filing No. 13-2 at 59-60.]

In *Lothridge*, the claimant suffered from several mental impairments, and the ALJ found that these impairments caused moderate limitations in understanding and applying information, interacting with others, and maintaining concentration, persistence, and pace. 984 F.3d at 1232.

At the hearing, the VE testified that in order to do the representative jobs, a hypothetical worker would need to be on task at least 90 percent of the workday and could only be absent once a month. *Id*. at 1232. "The ALJ's decision, however, did not address one way or another whether [the claimant] could meet those requirements." *Id*. at 1233. The Commissioner argued that the claimant failed to identify any additional limitations supported by the record, but the Seventh Circuit rejected that argument, concluding that the ALJ erred to the extent that the ALJ "neither cited evidence that [the claimant] could meet [the on-task and attendance] benchmarks nor addressed the evidence that she could not." *Id*. at 1234.

Similarly, in *Sheryl B*., the VE testified that a hypothetical employee would need to be on task at least 90 percent of the time to hold the positions identified by the VE at the hearing. *See* 2021 WL 3855482, at *6. Relying on *Lothridge*, this Court concluded that the ALJ "made no determination one way or another" whether the claimant could meet those requirements, and therefore remand was required. *Id*.

In *Tina F*., the VE testified that being off task for 25 percent of the workday in addition to regularly scheduled breaks would preclude gainful employment, but was not asked to specify the precise percentage of off-task time that employers would tolerate. *See* 2021 WL 4488162, at *4. In crafting the RFC, the ALJ considered that the claimant could be off task up to ten percent of the time as a result of needing to change positions, at will, between sitting and standing. *Id*. However, the claimant argued that the ALJ did not account for additional time that the claimant would need to be off task due to her mental impairments. *Id*. The Court rejected the claimant's argument, stating:

> The problem, here, though, is that Tina F. makes an unsupported leap from the fact that the ALJ found that she had moderate limitations of concentration, persistence, or pace to the conclusion that she would require additional downtime

that would preclude all employment.  She does not point to any evidence in the record that supports that conclusion.

*Id.* (footnote omitted).

Notably, the *Tina F.* Court did not discuss or even mention *Lothridge*.  The Court therefore is not persuaded that *Tina F.* represents a proper application of the binding principles established in *Lothridge*.  Furthermore, the ALJ in *Tina F.* crafted the RFC to allow for the claimant to be off task ten percent of the time, and the Court reasoned that the claimant needed to point to evidence to demonstrate that additional off-task time would be required.  This is distinguishable from the instant case, in which the ALJ made no finding at all regarding how much time Chassity M. would be off task in light of either her need to change positions or the moderate limitations caused by her mental impairments.

Both the VEs that testified in this case specifically stated that an individual must be able to be on task for at least 90 percent of the workday in order to be employed.  In both instances, the ALJ explicitly solicited testimony on this issue.  [Filing No. 13-2 at 57; Filing No. 13-2 at 107.]  But in the Second Decision, the ALJ did not make any finding regarding whether Chassity M. could meet this requirement for employment.  In order to afford a claimant meaningful review, the Court "must be able to trace the ALJ's path of reasoning."  *Clifford*, 227 F.3d at 874.  And, under *Lothridge*, that requires that the ALJ address one way or the other whether the claimant can be on task enough to sustain employment.  Accordingly, remand is appropriate for the ALJ to address this issue.

### B.  Whether the ALJ Erred in Failing to Address Conflicting VE Testimony

Chassity M. argues that the ALJ failed to address conflicting testimony from Mr. Franklin at the First Hearing and Mr. Harrison at the Second Hearing regarding the threshold of employer tolerance of an individual's need to change positions while working.  [Filing No. 15 at

17-21.]  Chassity M. contends that the ALJ was required to consider this conflicting evidence and explain her reasoning for adopting Mr. Harrison's testimony and rejecting Mr. Franklin's. [Filing No. 15 at 19-21.]

In response, the Commissioner asserts that "[t]here is not a statutory or regulatory duty for an ALJ to reconcile the [VE] evidence from the evidence provided by an expert at a prior hearing." [Filing No. 16 at 9.]  The Commissioner also points out that Chassity M. had the same attorney at the First Hearing and the Second Hearing, and counsel did not cross-examine Mr. Harrison on his testimony about alternating positions, nor did he raise to the ALJ the issue of conflicting VE testimony.  [Filing No. 16 at 9-10.]  Accordingly, the Commissioner contends, remand is not required.  [Filing No. 16 at 10.]

In reply, Chassity M. contends that the Commissioner does not contest that the ALJ found that Chassity M. must be able to alternate between sitting and standing every 15 minutes, that Mr. Franklin testified at the First Hearing that a person who needs to alternate positions every 15 minutes would be unemployable, or that error exists when an ALJ fails to discuss material, conflicting evidence.  [Filing No. 17 at 7.]  Chassity M. maintains that, as the factfinder, the ALJ has a duty to resolve conflicts in the evidence.  [Filing No. 17 at 8-9.] Chassity M. argues that the testimony adduced at the First Hearing remained evidence in the case even after the Second Hearing, still constitutes part of the record, and was expressly considered by the ALJ in rendering her decision.  [Filing No. 17 at 9-11.]  Finally, Chassity M. asserts that counsel was not required to raise the issue of conflicting testimony at the Second Hearing because "it is the ALJ's duty to resolve conflicts in the evidence," and a "claimant is not required to tell an ALJ how to do her job or point out every evidentiary conflict." [Filing No. 17 at 11.]

At the First Hearing, the ALJ asked Mr. Franklin if he had an opinion regarding employer tolerances for alternating positions for light and sedentary jobs.  [Filing No. 13-2 at 106.]  He stated:

> Every employer has an expectation of productivity.  If the person -- if an employee was able to sit or stand at will without creating a distraction in a workplace and also able to maintain the productivity that is expected, the employer would have no problems with that being able to -- with the employee being able to sit or stand as needed.

[Filing No. 13-2 at 106.]  The ALJ then asked Mr. Franklin if his opinion would change if the hypothetical claimant "would need to alternate positions for one to two minutes after 30 minutes."  [Filing No. 13-2 at 106-07.]  Mr. Franklin responded:  "It's my opinion that would be too many disruptions and I'm sure that it would -- that kind of sit and stand would be an interruption in the workplace and also a distraction in the workplace, and would be a loss of productivity."  [Filing No. 13-2 at 107.]

At the Second Hearing, the VE, Mr. Harrison, identified the representative occupations that a hypothetical claimant with the same age, education, work experience, and RFC as Chassity M. could perform.  [Filing No. 13-2 at 54-55.]  Mr. Harrison further stated:  "My opinion is that for the jobs that I have indicated, . . . -- and I would say in general -- as alternating between sitting and standing should not be more frequent than 15-minute intervals."  [Filing No. 13-2 at 55.]  Mr. Harrison explained that this opinion was "based on [his] work experience and having seen such alternation take place."  [Filing No. 13-2 at 55.]

In the Second Decision, the ALJ noted that one of the reasons the case was remanded by the Appeals Council was so that the ALJ could "give further consideration to the subjective complaints of [Chassity M.'s] need to alternate between sitting and standing and its effect on [Chassity M.'s] [RFC]."  [Filing No. 13-2 at 21; *see also* Filing No. 13-3 at 46 (the Appeals

Council's remand order listing the issues for the ALJ to consider on remand).] On remand, the ALJ ultimately found that Chassity M. would need to alternate positions while working, but could not do so more frequently than every 15 minutes. [Filing No. 13-2 at 26.] In doing so, the ALJ expressly considered evidence adduced at both the First Hearing and the Second Hearing, including Chassity M.'s testimony from the First Hearing. [*See* Filing No. 13-2 at 27 ("I note that the claimant's representative deferred further questioning of his client at the recent hearing, thus, my references to the claimant's testimony at the hearing refers to her testimony at the 3/20/2019 hearing.").] But the ALJ did not address the fact that one VE testified that a person who needed to change positions every 15 minutes could sustain employment, while the other VE testified that such a person could not sustain employment.

"[T]he ALJ is the factfinder in a disability proceeding. . . ." *Underwood v. Astrue*, 430 F. App'x 532, 535 (7th Cir. 2011). "The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact and determine the case accordingly." *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1094 (E.D. Wis. 2001) (citing *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971)). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Here, the ALJ had a duty to resolve material conflicts in the evidence and address evidence contrary to the ruling, including Mr. Franklin's testimony suggesting that an employee who needs to alternate positions every 30 minutes would not be able to sustain employment. The Commissioner's position appears to be based on the notion that testimony from the First Hearing is no longer part of the record evidence after testimony from a different VE was adduced at the Second Hearing. But the Commissioner offers no legal support for that notion, and it is

inconsistent with the ALJ's express reliance on other evidence adduced at the First Hearing. This is especially true given that the conflict related to one of the issues that the ALJ was expressly directed to reconsider on remand. ALJs and reviewing courts routinely consider the record as a whole, including evidence adduced at hearings before and after remand. *See, e.g.*, *Paulson v. Astrue*, 368 F. App'x 758, 760 (9th Cir. 2010) (holding that the ALJ did not err in relying on VE testimony adduced at a prior hearing before a different ALJ); *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996) (finding that "the third ALJ's examination of the conflicting [VE] testimony from the two prior hearings was appropriate"); *Sabrena F. v. Saul*, 2020 WL 4551670, at *4 (W.D. Va. July 20, 2020), report and recommendation adopted, 2020 WL 4548131 (W.D. Va. Aug. 6, 2020) (finding no error where the ALJ considered evidence and testimony presented at second and third administrative hearings); *Henry v. Astrue*, 2009 WL 1636992, at *12 (C.D. Ill. June 10, 2009) (affirming ALJ's conclusion that claimant's conflicting testimony at first and second hearings indicated dishonesty at the second hearing); *Naudain v. Apfel*, 119 F. Supp. 2d 812, 818 (C.D. Ill. 2000) ("[A]n ALJ may properly rely upon evidence presented at a prior hearing in making his determination.").

In sum, the ALJ's failure to address the conflicts in the testimony by the two VEs or explain her reasoning for accepting one VE's testimony over the other prevents the Court from tracing the path of her reasoning and affording Chassity M. meaningful review of the ALJ's decision. *See Clifford*, 227 F.3d at 874. Accordingly, remand is appropriate.

## IV.
### CONCLUSION

Based on the foregoing, the Court **REVERSES** the ALJ's decision denying Chassity M. benefits and **REMANDS** this matter for further proceedings consistent with this opinion,

pursuant to 42 U.S.C. §§ 405(g) (sentence four) and 1383(c).   Final judgment shall issue accordingly.



Date: 5/4/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana




**Distribution via ECF only to all counsel of record**